

355 POST AVENUE, STE 201  WESTBURY, NEW YORK 11590  PHONE (516) 334-4500  FAX (516) 334-4501  WWW.SOKOLOFFSTERN.COM

LEO DORFMAN
LDORFMAN@SOKOLOFFSTERN.COM

February 15, 2011

**Via ECF**
Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   *Majors v. City of New York, et al.*
>        10 CV 4730 (BMC)
>        <u>Our File No. 100094</u>

Your Honor:

We are *pro bono* counsel for the City of New York in the above-referenced matter. We write to update the Court with respect to the status of our continued investigation into this matter and to respectfully request (1) that we be relieved of our obligation, arising from the Court's Order dated February 2, 2011, to interview each of the 25 officers who were assigned to IMPACT on the night in question;  and (2) that the Court "so order" the attached subpoena for the deposition of Mr. Richard Swinson, who has refused to accept service of defendant's subpoena, deem mailing to constitute good service of the same, and extend defendants' time to depose Mr. Swinson.

**Defendants' Position**

*Investigation of Officers Assigned to IMPACT*

We have now reviewed the SPRINT reports for the night of plaintiff's arrest and have obtained memo books all 25 officers assigned to the IMPACT tour at the time of plaintiff's arrest. The SPRINT report revealed that the call came from an anonymous caller, not another officer, and that, in addition to the defendants, two more officers responded to the scene. Counter to plaintiff's testimony, however, both officers were female and neither wore a yarmulka. Furthermore, there was no officer with the name "Goldgrab" or the like assiged to PSA2 on the date of the alleged incident in question. Nevertheless, we have spoken to one of the female officers (the other is on military leave) and have confirmed what her memo book states, i.e., that she was not involved in plaintiff's arrest. According to the SPRINT report, no other officers responded to the scene.

The 25 memo books we reviewed only serve to confirm what the defendant officers and every other document has maintained: Officers Pumilia and Roder were the only two officers involved in plaintiff's arrest.

Sokoloff Stern LLP

Hon. Brian M. Cogan
February 16, 2011
Page 2 of 4

Under the circumstances, defendants respectfully submit that individual interviews with all 25 officers would be unduly burdensome and of absolutely no value to this case.  Therefore, defendants request that the Court deem their investigation sufficient under the circumstances and relieve them of their obligation to conduct further interviews in this matter.

Since, "plaintiff, agrees that interviewing [the 25 officers] would not be a valuable use of resources, it appears that there is no opposition to the instant motion.l

*Subpoena of Mr. Richard Swinson*

Following the February 2, 2011 conference with the Court, plaintiff provided us with the name of his former employer, Mr. Richard Swinson.  Since plaintiff is suddenly claiming that he has suffered lost wages, we attempted to subpoena Mr. Swinson to be deposed on February 18, 2011, per the Court's order.  Mr. Swinson has, however, refused to accept personal service of the subpoena, insisting that the subpoena be mailed instead.[1]  Given Mr. Swinson's position on the matter, we request that Your Honor "so order" the enclosed subpoena for Mr. Swinson's deposition and deem mailing to constitute proper service of the same.  Additionally, given this unexpected difficulty, we ask that the Court extend defendants' time to take such depositon by three weeks, to March 11, 2011.

*The Rest of Plaintiff's Position*

Having taken no position on one part of defendants' application and apparently consented to the other, plaintiff takes up an apparent effort to reiterate and relitigate precisely the issues that were addressed by the Court at the February 2, 2011 conference.  At that conference, plaintiff raised concerns about the extent of defendants' investigation into the allegations of his complaint and asked that defendants be required to speak with what plaintiff represented were 6 or so officers assigned to IMPACT on the night of the arrest.  Your Honor ordered that we do so and we obtained the memo books of the 25 plus officers on that tour.  Plaintiff agrees that this was sufficient.  Your Honor ordered defendants to search the Roll Call for any officers named Goldgrab or something similar and defendants did so.

Now, because the result of the investigation does not support plaintiff's version of events, plaintiff wants more and *again* accuses defendants of shirking their obligations.  It appears that plaintiff believes Fed. R. Civ. P. 26(a) shifts plaintiff's obligation of prosecuting his case over to defendants, that it imposes some unlimited obligation upon defense counsel to provide answers – even when none exist – to all of plaintiff's questions.  This is not defendants' reading of Fed. R. Civ. P. 26(a).  If plaintiff is interested in obtaining documents, he can serve defendants with requests for same and litigate the request in the regular course.  If defendant seeks answers to questions, interrogatories and depositions are the appropriate vehicles.

In short, defendants are unsure of what, if any, relief plaintiff seeks in this submission and, therefore, are unable to provide a substantive response.  In the event the Court reads

---

[1] A copy of the Affidavit of Attempted Service is enclosed.

Sokoloff Stern LLP

Hon. Brian M. Cogan
February 16, 2011
Page 3 of 4

plaintiff's position as actually seeking some discernible relief, defendants respectfully request that they be given an opportunity and a reasonable time to respond.

**Plaintiff's position**

Plaintiff takes no position as to the subpeona of Mr. Swinson or to the request to extend the time to take his deposition.

As to the investigation of the officers who responded to the scene of plaintiff's arrest, plaintiff does not agree that defendants' investigation thus far should be deemed sufficient. Defendants apparently have confirmed that they have obtained the Memo Book entries for the date in question and none of those officers' Memo Books have indicated that they were at the scene of the arrest.  Since interviewing these officers is unlikely to lead to the discovery of admissible evidence, plaintiff agrees that interviewing them would not be a valuable use of resources.

However, it seems that defendants have only chosen to conduct the bare minimum in terms of their obligations under Fed. R. Civ. P. 26.  Your Honor's order specifically asked defendants to obtain the Memo Books of all officers assigned to Impact and speak to them.  It appears that defendants have chosen to just comply with the first part of the order and seek relief from the second part.  It also appears that they have chosen to engage in no further investigation or due diligence to ascertain whether in fact there were any other officers who responded to the scene of plaintiff's arrest.

As plaintiff is the only one in this case who has a specific recollection of his arrest, his recollection should control.  He recalled a male officer with a yarmulka and another male officer at the scene of his arrest before defendants Pumilia and Roder arrived.  The Sprint Report indicated that the female officers who answered the radio call were not the same officers plaintiff states were present at his arrest.  Defendants' investigation as to the identity of these other officers appears to have merely consisted of a search for an officer named "Goldgrab" "or the like" and the conclusion that no such officer existed.  Defendants' due diligence should have included, at a minimum, ascertaining whether or not any officer assigned to PSA 2 wears a yarmulka.  If no such officer existed then presumably their obligation would have been fulfilled. If one does exist or was assigned to PSA 2 in June 2010 as Officer Pumilia testified, then they should have obtained his Memo Book and confirmed that this officer was not at the scene of plaintiff's arrest.

At the court conference, plaintiff suggested that officers other than those assigned to Impact may have responded to the scene.  Plaintiff mentioned that officers could have been assigned to patrol that particular sector of the precinct.  Discussions were held about the Roll Call (which has never been produced to plaintiff) and how it might help ascertain who actually responded to the scene.  It appears from defendants' application that they have not undertaken a search to see which officers, other than those assigned to Impact, were actually present at the scene of plaintiff's arrest.

Sokoloff Stern LLP

Hon. Brian M. Cogan
February 16, 2011
Page 4 of 4


It bears noting that plaintiff asked *pro bono* counsel very early in the case whether or not a sergeant or a supervisor responded to the scene as a supervisor usually needs to "verify" an arrest in the field.  Subsequent discovery revealed that a Sergeant Granville signed off on the arrest paperwork.  Since defendants have failed to identify what role Sgt. Granville played, plaintiff has been left to speculate that Sgt. Granville's only involvement was in signing off on the paperwork and that he was presumably the desk sergeant at the time the paperwork was filled out.

The Command Log produced by defendants indicates, however, that plaintiff's arrest was actually verified and verified by a "Sgt. Luciano."  Plaintiff raised this fact with *pro bono* counsel and asked him to supplement his Rule 26(a) disclosures to provide plaintiff with his full name and service address and the subject of his discoverable information.  Inexplicably, *pro bono* counsel indicated that he had no obligation to supplement his disclosure as he did not agree that Sgt. Luciano would be a person who had to be disclosed pursuant to Rule 26(a).  Defendants are in exclusive possession of all the documents in this case.  In one breath, defendants state they have no recollection of this incident and in the other breath state, with certainty, despite failing to conduct a full investigation which they are obligated to undertake pursuant to the Federal Rules, that no other officers responded to the scene.  Defendants should be at least allowed to ascertain how Sgt. Luciano actually verified the arrest.  Did he respond to the scene?  Did he speak to Pumilia or Roder?  Did he speak to officers other than Pumilia or Roder?  If Sgt. Luciano determined based upon what he was told that it was permissible to arrest plaintiff he could be liable for failing to intervene in the false arrest of plaintiff.

Plaintiff requests that defendants undertake a search of any officer, sergeant or supervisor who reasonably could have been at the scene of plaintiff's arrest—meaning that they worked the same tour as plaintiff's arrest and were assigned to work the same sector of the precinct covered by the location of plaintiff's arrest.  Without actually seeing the Roll Call, plaintiff can only surmise that the number of officers contemplated should amount to less than the 25 officers with whom the defendants are currently ordered to speak.  At minimum, defendants should be required to certify that they have performed all their due diligence under Rule 26(a) and that either in an attorney affirmation or an affidavit or some other admissible document that no other officers responded to the scene of plaintiff's arrest other than Pumilia and Roder.

Thank you for your consideration of this matter.


Respectfully submitted,
SOKOLOFF STERN LLP

LEO DORFMAN

cc:  Afsaan Saleem, Esq. (Via ECF)