UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALBERT MAJORS IV,

    Plaintiff,

-against-

CITY OF NEW YORK, ROBERT PUMILIA SHIELD NO. 10574, BRIAN RODER, SHIELD NO. 27358, and JOHN and JANE DOE 1 through 10, individually and in their official capacities, (the names John and Jane Doe being fictitious, as the true names are presently unknown),

    Defendants.
-------------------------------------------------------------------X

Docket No.: 10-CV-4730
(BMC)

**DEFENDANTS' LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

Defendants City of New York, Police Officer Robert Pumilia, Police Officer Brian Roder submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, to set forth the material facts as to which they contend there is no genuine issue to be tried[1]:

1. On June 19, 2010, plaintiff was arrested for trespassing in a New York City Housing Authority ("NYCHA") building located at 284 Sutter Avenue, Brooklyn, NY. [Ex. A]

2. At the time, Plaintiff resided at 585 Blake Avenue, Apartment 4C, Brooklyn, NY 11207. [Plaintiff's Deposition (hereinafter, "Pl. Dep."), p. 39 (Ex. D)].

3. On June 19 2010, Plaintiff did not reside in a New York City Housing Authority ("NYCHA") building. [Pl. Dep., p. 41 (Ex. D)].

---

[1] All but a handful of the material facts set forth herein are taken directly from plaintiff's sworn testimony and plaintiff's Amended Complaint. For the limited purpose of the instant motion only, defendants defer entirely to plaintiff's own sworn account of the events of June 19, 2010.

1

4. 284 Sutter Avenue, Brooklyn, NY ("284 Sutter") is a New York City Housing Authority ("NYCHA") building. [Ex. A, ¶ 13]

5. 284 Sutter has two sides, an "A-Side" and a "B-Side." [Pl. Dep., p. 122 (Ex. D)].

6. The A-Side of 284 Sutter has a staircase. [Pl. Dep., p. 122 (Ex. D)].

7. The A-Side of 284 Sutter has three apartments on each floor. [Pl. Dep., p. 124 (Ex. D)].

8. The B-Side of 284 Sutter has a staircase. [Pl. Dep., p. 122 (Ex. D)].

9. The B-Side of 284 Sutter has two apartments on each floor. [Pl. Dep., p. 122 (Ex. D)].

10. The A-Side and B-Side are separated by a door. [Pl. Dep., p. 124 (Ex. D)].

11. In the lobby of 284 Sutter, there are New York City Housing Authority signs. [Pl. Dep., p. 122 (Ex. D)].

12. The New York City Housing Authority signs in the lobby of 284 Sutter prohibit trespassing. [Pl. Dep., p. 123 (Ex. D)].

13. At about 12:00am on June 19, 2010, there were approximately 10 individuals gathered in the Fourth Floor hallway on the A-Side of 284 Sutter. [Pl. Dep., p. 125-127 (Ex. D)].

14. The 10 or so individuals were playing dice for money. [Pl. Dep., p. 127 (Ex. D)].

15. The 10 or so individuals filled the Fourth Floor hallway on the A-Side of 284 Sutter. [Pl. Dep., p. 126 (Ex. D)].

16. The 10 or so individuals playing dice for money were screaming very loud. [Pl. Dep., p. 128 (Ex. D)].

17. The 10 or so individuals playing dice for money were visible to those outside and in front of the building via a large window. [Pl. Dep., p. 126 (Ex. D)].

18. Plaintiff knows two of the 10 individuals who were playing dice as "Reef" and "Holla." [Pl. Dep., p. 127 (Ex. D)].

19. At 12:58 am, the New York City Police Department received an anonymous report that persons were playing dice on the Fourth Floor of 284 Sutter. [Ex. E].

20. Police officers responded to the call. [Ex. E].

21. One police officer proceeded up the A-Side staircase towards the Fourth Floor, where the dice-players were congregated. [Pl. Dep., p. 139 (Ex. D)].

22. The police officer was wearing a blue uniform. [Pl. Dep., p. 141 (Ex. D)].

23. As the officer ran up the stairs towards the Fourth Floor, the dice-players ran from the A-Side, through the door separating the A-Side and the B-Side, and into an apartment on the B-Side of the building. [Pl. Dep., p. 142 (Ex. D)].

24. The police officer chased the dice-players. [Pl. Dep., p. 144 (Ex. D)].

25. The dice-players ran into an apartment on the Fourth Floor on the B-Side of 284 Sutter Avenue. [Pl. Dep., p. 143 (Ex. D)].

26. As the dice-players were running into the Fourth Floor apartment with the police officer giving chase, plaintiff was on the staircase between the Third and Fourth Floors on the B-Side of 284 Sutter. [Pl. Dep., p. 146 (Ex. D)].

27. Plaintiff was halfway up the staircase. [Pl. Dep., p. Dep., p. 146 (Ex. D)].

28. Just as the door to the dice-players' apartment slammed shut, the officer saw plaintiff moving down the stairs, away from the Fourth Floor. [Pl. Dep., p. 146 (Ex. D)].

29. Immediately, the officer moved down the stairs towards plaintiff. [Pl. Dep., p. 146 (Ex. D)].

30. Approaching plaintiff from behind, the officer folded his arms around plaintiff's chest. [Pl. Dep., p. 146 (Ex. D)].

31. At the same time, another officer approached plaintiff from the front. [Pl. Dep., p. 147 (Ex. D)].

32. The officer who approached plaintiff from the front was white, short and stocky. [Pl. Dep., p. 147 (Ex. D)].

33. He wore a blue uniform and hat. [Pl. Dep., p. 147 (Ex. D)].

34. The officer who approached plaintiff from behind was taller and skinnier than the officer who approached form the front. [Pl. Dep., p. 148 (Ex. D)].

35. He had gold or brown hair and wore a yarmulke. [Pl. Dep., p. 148 (Ex. D)].

36. Plaintiff does not know the names of either the shorter or taller office whom he encountered on June 10, 2010. [Pl. Dep., p. 147 (Ex. D)].

37. The taller officer asked, "What's wrong with you, man, you know not to run from the police." [Pl. Dep., p. 149 (Ex. D)].

38. In response, plaintiff asked, "Who's running?" [Pl. Dep., p. 149 (Ex. D)].

39. The officers escorted plaintiff down the stairs. [Pl. Dep., p. 150 (Ex. D)].

40. The taller officer asked plaintiff to stand up against the wall. [Pl. Dep., p. 150 (Ex. D)].

41. Plaintiff stood with his back to the wall, facing both officers. [Pl. Dep., p. 150 (Ex. D)].

42. The shorter officer stood to plaintiff's left and the taller to his right. [Pl. Dep., p. 151 (Ex. D)].

43. The taller officer then asked, "… you guys playing dice in the hallway?" [Pl. Dep., p. 149 (Ex. D)].

44. The officers then asked plaintiff, "… you live in the building?" [Pl. Dep., p. 152 (Ex. D)].

45. Plaintiff responded, "No, I don't." [Pl. Dep., p. 152 (Ex. D)].

46. The officers asked, "What [are] you doing in the building?" [Pl. Dep., p. 152 (Ex. D)].

47. Plaintiff responded that he has a friend in the building. [Pl. Dep., p. 152 (Ex. D)].

48. Plaintiff did not say that he was visiting that friend or where in the building that friend lived. [Pl. Dep., p. 180 (Ex. D)].

49. Plaintiff did not provide the officers with a name of a friend who lived in the building. [Pl. Dep., p. 180 (Ex. D)].

50. During this exchange, plaintiff had his back to the wall, but neither officer had a hand on him. [Pl. Dep., p. 152 (Ex. D)].

51. The taller officer then asked, "Oh, you guys are playing dice?" [Pl. Dep., p. 155 (Ex. D)].

52. Plaintiff responded, "No, man, I'm not playing no dice." [Pl. Dep., p. 155 (Ex. D)].

53. Plaintiff continued, "I got friends in the building, you know what I'm saying." [Pl. Dep., p. 155 (Ex. D)].

54. The taller officer then asked plaintiff to stop his movement. [Pl. Dep., p. 155 (Ex. D)].

55. Plaintiff's mobile phone rang and he reached for it. [Pl. Dep., p. 155 (Ex. D)].

56. The taller officer said, "Yo, man, keep your hands out of your pocket." [Pl. Dep., p. 155 (Ex. D)].

57. Plaintiff continued to fidget. [Pl. Dep., p. 155 (Ex. D)].

58. The taller officer turned to the shorter and said, "Handcuff him, he's moving too much." [Pl. Dep., p. 156 (Ex. D)].

59. Plaintiff was asked to turn around and put his hands behind his back. [Pl. Dep., p. 157 (Ex. D)].

60. Plaintiff complied. [Pl. Dep., p. 157 (Ex. D)].

61. Plaintiff was handcuffed. [Pl. Dep., p. 158 (Ex. D)].

62. The taller officer then asked whether plaintiff's friend's apartment was the apartment that the guys ran into. [Pl. Dep., p. 158 (Ex. D)].

63. Plaintiff said no. [Pl. Dep., p. 159 (Ex. D)].

64. Plaintiff did not tell the officers where his friend lived. [Pl. Dep., p. 180 (Ex. D)].

65. Again, plaintiff did not provide the officers with a name of a friend who lived in the building. [Pl. Dep., p. 180 (Ex. D)].

66. The taller officer then asked plaintiff to, "go knock on you pal's door upstairs, and we'll let you go." [Pl. Dep., p. 159 (Ex. D)].

67. Plaintiff responded, "I'm not going to knock on their door upstairs." [Pl. Dep., p. 159 (Ex. D)].

68. The taller officer then stated, "Hey, man you… want to be a smart guy, you going to jail for criminal trespassing." [Pl. Dep., p. 159 (Ex. D)].

69. Plaintiff responded, "Nobody's trespassing." [Pl. Dep., p. 159 (Ex. D)].

70. The taller officer then stated, "Oh, you guys are in here playing dice, smoking weed." [Pl. Dep., p. 160 (Ex. D)].

71. The taller officer then used his radio. [Pl. Dep., p. 160 (Ex. D)].

72. Seven minutes later, two more officers arrived on the scene. [Pl. Dep., p. 162 (Ex. D)].

73. Plaintiff repeated that he knows people in the building. [Pl. Dep., p. 165 (Ex. D)].

74. Again, plaintiff did not indicate who he knew, where they lived, or whether he was actually visiting those friends. [Pl. Dep., p. 180 (Ex. D)].

75. The two officers that arrived on the scene after the seven minute wait were both white. [Pl. Dep., p. 165-166 (Ex. D)].

76. Both of the two officers were wearing blue uniforms. [Pl. Dep., p. 166 (Ex. D)].

77. Both of the two officers were wearing their hats. [Pl. Dep., p. 166 (Ex. D)].

78. One of the two officers was Officer Robert Pumilia. [Pl. Dep., p. 166 (Ex. D)].

79. Neither Officer Pumilia nor the other officer who arrived with him said anything to plaintiff when they arrived. [Pl. Dep., p. 168 (Ex. D)].

80. The four officers on the scene had a discussion amongst themselves. [Pl. Dep., p. 168-169 (Ex. D)].

81. Plaintiff did not say anything to either Officer Pumilia or the other officer when the two arrived. [Pl. Dep., p. 168 (Ex. D)].

82. Three to four minutes after Pumilia and his partner arrived, a police car arrived outside. [Pl. Dep., p. 170 (Ex. D)].

83. Plaintiff got into the back seat of a police car. [Pl. Dep., p. 171 (Ex. D)].

84. Plaintiff and Officer Pumilia rode to the precinct in the car. [Pl. Dep., p. 178 (Ex. D)].

85. Plaintiff was taken to PSA-2. [Pl. Dep., p. 183 (Ex. D)].

86. Officer Pumilia escorted plaintiff back to the precinct and prepared the necessary paperwork. [Pl. Dep., p. 167 (Ex. D)].

87. Plaintiff was charged with Criminal Trespass in the Third Degree, N.Y. Penal Law § 140.10. [Ex. F].

88. Plaintiff was later released with a Desk Appearance Ticket [Ex., A, ¶ 21].

89. Plaintiff ultimately received an ACD for the arrest. [Pl. Dep., p. 196 (Ex. D)].

90. Defendant Roder did not stop plaintiff in 284 Sutter Ave. on June 19, 2010. [Pl. Dep., p. 165-168 (Ex. D)].

91. Defendant Roder did not speak with plaintiff at any time on June 19, 2010. [Pl. Dep., p. 165-168 (Ex. D)].

92. Defendant Roder did not apprehend plaintiff on June 19, 2010. [Pl. Dep., p. 165-168 (Ex. D)].

93. Defendant Roder did not handcuff plaintiff on June 19, 2010. [Pl. Dep., p. 158, 165-168 (Ex. D)].

94. Defendant Pumila did not stop plaintiff in the building. [Pl. Dep., p. 165-168 (Ex. D)].

95. Defendnat Pumila did not speak with plaintiff prior to his arrest on June 19, 2010. [Pl. Dep., p. 165-168 (Ex. D)].

96. Defendant Pumila did not apprehend plaintiff on June 19, 2010. [Pl. Dep., p. 158, 165-168 (Ex. D)].

97. Defendant Pumila did not handcuff plaintiff on June 19, 2010. [Pl. Dep., p. 158, 165-168 (Ex. D)].

Dated: Westbury, New York
       February 23, 2011

                                                **SOKOLOFF STERN LLP**
                                                Attorneys for Defendants

By:   Leo Dorfman
       355 Post Avenue, Suite 201
       Westbury, New York 11590
       (516) 334-4500
       Our File No. 100094

**MICHAEL A. CARDOZO**
Corporation Counsel of the
City of New York
Attorney for Defendants
100 Church Street, Room 3-221
New York, New York 10007
(212) 788-1096

By:

    /s/_____
    Sumit Sud
    Assistant Corporation Counsel
    Special Federal Litigation Division

9